Minshali, J.
The .principal issue of fact in tho case was, whether Levi Brewster, the ancestor of the plaintiffs, was the same person who was known in Union county by the name of Robson L. Broome, and died possessed of the property in con *693 troversy. As tending to support the issue on their part, the plaintiffs introduced (1) a letter purporting to have been written by Levi Brewster in the year 1810 from an academy in Connecticut, addressed to Elisha Brewster, as his brother. No other evidence was introduced that it had been so written than that it had been obtained from the family papers of Elisha Brewster, then deceased, who was the brother of Levi. Also (2) a pay-roll of 7th company, 20th regiment, in the war of 1812, on which one Levi Brewster appears as receipting for pay as a private in said company,' with evidence tending to show that he had been a private in the same; but no evidence was introduced to show that he in fact signed the roll, other than that it was produced from the archives of the government in the war department at Washington city.
As standards of comparison they also introduced (3) certain books and writings, admitted or duly proven to be in the genuine handwriting of the decedent, written by him while living at Marysville, in Union county, under the name of Robson L. Broome.
Experts were then called who, upon a comparison of the writings, testified that, in their opinions, the letter and the signature to the pay-roll were in the same handwriting as were the books and writings that had been introduced as standards of comparison.
Two objections are made to the admissibility of this evidence : (1) That it is not shown that the letter was written, nor that the pay-roll was signed, by the Levi Brewster whom the plaintiffs claim to have been their ancestor. (2) That proof of handwriting by comparison of hands is not competent for the purpose of proving the identity of a person.
1. We do not understand from the bill of exceptions that there was any serious controversy in the case as to the name of the ancestor of the plaintiffs, or as to who were his relatives. These facts we may assume were reduced to reasonable, if not absolute certainty. So that this objection must be understood as applying to the introduction of the letter and pay-roll for comparison with the admitted writings of Broome, without other evidence that the letter had been written or the pay-roll *694 signed by Levi Brewster, the ancestor of the plaintiffs, than as before stated.
It is true there was no direct evidence as to who wrote the letter, or as to who signed the pay-roll. The letter was written in 1810, and the pay-roll was signed in 1814. It would have been difficult, if not impossible, to show the fact by direct testimony after such a lapse of time. But more or less credit has always been attached to ancient documents without other proof of their authenticity than that of their production from' proper depositories. Where any document purporting or proved to be thirty years old is produced from its proper custody, it is presumed that the signature and every other part of such document which purports to be in the handwriting of any particular person is in that person’s handwriting. Steph. Dig. Ev. 156; Whart. Ev., § 194, et seq.; id., § 703.
This exception to the general rules of evidence rests upon a conceded necessity, (Tay. Ev., § 1874) and applies not only to such instruments as are of a formal character, such as wills, bonds, and other deeds, but also to receipts, letters, entries, and all other ancient writings. 2 Phil. Ev. (10 Eng. 4 Am. ed.) 481.
Thus in Bere v. Ward, on the trial of an issue as to the legitimacy of a particular person, a very old letter, purporting to bear the signature of the head of the family, and brought from among the title deeds kept at the family seat, was admitted as genuine, without further proof of handwriting, by Dallas, C. J., and also by Lord Tenterden on a second trial. 2 Phil. Ev., supra, note 4. This ruling was followed in Doe d. Thomas v. Beynon, 12 A. & E. 431 where certain old letters were admitted in evidence upon the issue in the case, whether the person claiming as devisee of the writer was the person intended. They were admitted without proof of handwriting or other proof of their genuineness than that they were found among the papers of the person to whom they had been addressed, at the time of her death. In Bertie v. Beaumont, 2 Price, 307, an old receipt, produced by the defendant, was admitted as evidence, tending to prove a modus without proof *695 of handwriting. There was some question made as to the custody of it, having been given to a person other than the one who produced it. Upon this the chief baron observed: “ It was not given to this Mr. Beaumont, but to another person of the same name, and who, of course, occupied lands in Buckland, for none but an occupier could have acquired such a receipt. That person being of the same name with the defendant, there is reasonable inference that they were so connected as to make this the proper custody; and reasonable .evidence of proper custody is all that can bo required, and is sufficient.” . In Fenwick v. Reed, 6 Mad. 7, it was ruled: “ That a letter, appearing upon the face of it to be written by the defendant’s ancestor, upon the subject of the suit, and coming out of the custody of the representative of his attorney, and dated in 1748, .was admissable without proof of handwriting — the contents of the letter, like the contents of a deed, affording intrinsic evidence in its favor..” The case was determined in 1821. And in Wynne v. Tyrwhitt, 4 B. & Ald. 876, it was said by the court: “The rule is not confined to deeds or wills, but extends to letters and other written documents coming from the proper custody. It is founded on the antiquity of the instrument, and the great difficulty, nay, impossibility, of proving the handwriting of the party after such a lapse of time.”
It is true that the admission of written instruments, without other proof of their genuineness than that which arises from their age and custody, opens the door to error and fraud. But this is no more so, when they are. introduced for the purpose of establishing the identity of a person by a comparison of hands, than when introduced for any other purpose. In commenting on the possibility of error and fraud attending the admission of ancient documents as evidence Prof. Wharton says: “No doubt ancient documents, as well as modern, may be forged.” To this he makes two replies: “ In the first place, while documents attested by witnesses since deceased have been forged, the fact that there is a possibility of such falsification is an objection to credibility, but not to competency. In the second place, by requiring that the docu *696 ment should be taken from the proper depository, the probability of falsification is greatly diminished.” 1 Wliart. Ev.,, § 194. This has been regarded as an adequate ground for the admission of such documents in evidence without further proofs of their authenticity by most writers on evidence. 2 Phil. Ev., supra, 480. No evidence is entirely free from infirmities of some kind. An honest witness may err- in his recollection of what he has seen or heard, or his own senses may have been deceived in what passed under his observation; or, on the other hand, the witness may be dishonest, and not tell the truth. But the possibility of error is not a ground for rejection of evidence in any case. It goes to its weight, and is to be considered by the jury or the court trying the case.
2. It is a well settled rule in this state that, where the genuineness of handwriting is involved, well attested standards-of the hand of the person whose writing is in question may be introduced for the purpose of comparison with that which is disputed; and that this comparison may be made, not only by persons who have seen, the -party write, or have acquired a knowledge of his hand by corresponding or transacting business with him, but also by persons skilled in handwriting, such as are usually called experts. Bragg v. Colwell, 19 Ohio St. 407; Pavey v. Pavey, 30 Ohio St. 600; Calkins v. State, 14 Ohio St. 222.
While this is not controverted, it'is argued that the letter and pay-roll should not have been admitted for the purpose-of comparison with the admitted writings of Broome upon any evidence less certain than that required in the case of standards. This is illogical. The fallacy consists in assuming tat the letter and pay-roll are the standards, or else that the-writing in dispute shall be ascertained with as much certainty as that with which it is compared, before the comparison is made. But neither assumption is true. The matter to be determined by a comparison of hands was whether the deceased, Broome, had written the letter or not, and so as to the payroll. And to require the same certainty as to who wrote the letter or signed the pay-roll, as is required as to the standards-of the party’s hand in question, would in no way aid the in *697 quiry, as neither could under such a rule be introduced until such conditions had been complied with as would render the introduction of either wholly unnecessary. This is inconsistent with the principle upon which such evidence is introduced; which is to determine the authorship of that which is unknown and disputed by comparison with that which is known and undisputed. Here the known factors in the case, as presented by the bill of exceptions, were the writings of the deceased, Broome, introduced as standards. Whether he had written the letter or signed the pay-roll was a fact to be proved; and a comparison of hands would tend, at least, to solve the question, and might reduce it to reasonable certainty. For it is self-evident that proof that two writings are in the same hand is evidence that they were written by the same person.
The uncertainty that may have arisen upon a mere corn-comparison of hands, as to whether Broome wrote the letter or signed the pay-roll, is not, on the competency of the evidence, to be confused with the uncertainty that may have-existed as to whether the one had been written and the other signed by the ancestor of the plaintiffs. It is true that on a question of proof; that is to say, the weight of the evidence, the one is connected with and depends upon the other; but on a question of competency, each is separate and independent; the admissibility of the letter and pay-roll rest upon their antiquity and the custody from which each was produced; the comparison of hands upon the credence which is in general attached to such evidence. We are not now considering the weight of the evidence; the only question presented by the record is the admissibility of that which was received and objected to, as shown by the bill of exceptions.
The spirit of the law of evidence permits a resort to every reasonable source of information upon a disputed question of fact arising in a case. Unless excluded by some positive exception, every thing relative to the issue is regarded as admissible ; and this is extended to every hypothesis pertinent to the issue. 1 Whart. Ev., § 20. Here the hypothesis proposed by the plaintiffs below was that the letter written from the academy by a Levi Brewster, and the signature of a pei> *698 son of the same name to the pay-roll, were in the same handwriting as were the writings introduced as standards, and admitted to be in that of the decedent. The pertinency of this hypothesis is apparent: If the fact were established, it would only remain to the plaintiffs, in order to make out their case, to shoAV that the Levi Brewster who wrote the letter or signed the pay-roll was their ancestor. Hence, upon principle, the competency of the evidence seems very plain.
But it is argued that no instance of a case can be produced where a comparison of hands was resorted to for the purpose of proving the identity of a person, except in what is claimed to be a very questionable one — the Tichborne case. In the first place, the case just referred to' is not regarded as one of questionable authority by writers on the law of evidence. 1 Whart. Ev., § 9, et seq. In the next place, many instances may be produced, other than that of the Queen v. Castro, in which a comparison of hands has been resorted to for this purpose.
In Commonwealth v. Webster, 5 Cush. 295, such evidence was introduced for the purpose of showing that certain anonymous letters, written in a disguised hand, addressed to the city marshal of Boston between the disappearance of the deceased and the arrest of the defendant, containing various suggestions calculated to mislead the officers of the law, had been written by the defendant. The object was to incriminate the accused by identifying him with the person who wrote the anonymous letters.
Such evidence has been received as competent for the purpose of identifying the defendant in prosecutions for sending-threatening letters and in arson. Also, for a like purpose, in suits for libel. Commonwealth v. Webster, supra, p. 301. 2 Greenlf. Ev., § 416.
Among the various circumstances relied on as tending to show that Sir Philip Francis was the author of Junius, wore, as enumerated by Prof. Wharton, that his handwriting had certain marked peculiarities. 1 Whart. Ev., § 23. This, however, could only be determined by a comparison instituted *699 between the writings of the supposed and the manuscript of the real author.
Again, it is resorted to in a large class of cases where there is a question as to whether the party sued is the person who signed the intstrument on which the suit is brought. 1 Grreenlf. Ev., § 575. In all such cases, it will be observed, the question is not as to the genuineness of the paper, but as to the identity of the party Rued, with the person who signed, and is liable upon it.
The object of offering such evidence may arise in a variety o-f forms. A writing may be in a disguised hand, as in the Webster case, or it may have been intended as an imitation of that of some third person, as in the case of a forgery, or it may be neither disguised nor imitated, as is assumed in this case. Now, it is evident that in either of the first two instances the liability to error in forming an opinion, even by experts, will be greater than in the last one; because in both of the first two instances the writing is executed for the express purpose of deceiving, while in the latter there has been neither dissimilation nor forgery, and one specimen of genuine writing is simply compared with another. So that, on principle, there is less room for questioning the propriety of a resort to a comparison of hands in the latter, than in either of the two former instances.
The value of such evidence on a question of personal identity is strikingly illustrated in the case above referred to as that of Tichborne’s. A comparison of the writings introduced in the case would convince any intelligent person that there was no truth whatever in the claim of the defendant. It disproves his identity with the real Sir Robert Tichborne. What was true in that case must be true to a greater or less extent in every instance where a case of personal identity is involved. Judicial proof is not a matter of mere arbitrary rules. Its principles are drawn from the experience and observation of men, and should be applied as they are by men in general. Every lawyer and judge of experience will confirm what is said by Mr. Philips in his work on evidence : “ It may be laid down as a first principle that exclusion is generally an *700 evil, and admission generally safe and wise.” To .which he adds : “ It is certain the administration of justice in our courts has suffered, not from too free admission of evidence, hut from too rigid exclusion.” 2 Phil. Ev. (Edward’s ed). 628.

Judgment affirmed.